# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: May 1, 2025

```
* * * * * * * * * * * * * * * * * * * * * * * * *
CHLOE LEMAY-ASSH,              *      No. 19-1284V
                              *
            Petitioner,        *      Special Master Young
v.                            *
                              *
SECRETARY OF HEALTH            *
AND HUMAN SERVICES,            *
                              *
            Respondent.        *
                              *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Robert J. Krakow*, Law Office of Robert J. Krakow, P.C., New York, NY, for Petitioner.
*Mary E. Holmes*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On June 30, 2023, Chloe Lemay-Assh ("Petitioner") filed a motion for attorneys' fees and costs, requesting $101,116.08 for the work of her counsel. Pet'r's Mot. Attorneys' Fees & Costs ("Pet'r's Mot.") at 59, ECF No. 66.[2] This amount consists of $98,447.15 in fees and $2,668.93 in costs, including $572.68 in costs incurred by Petitioner. *Id.* On September 15, 2023, Respondent filed his response to Petitioner's motion. Resp't's Objection to Pet'r's Mot. ("Resp't's Resp."), ECF No. 38. In his response, Respondent stated his opposition, asserting that "[P]etitioner's application for any award for fees and costs should be denied for lack of reasonable basis." *Id.* at 1. Petitioner filed a reply brief on October 25, 2023. Pet'r's Reply to Resp't's Resp. ("Pet'r's Reply"), ECF No. 74. On November 25, 2023, Petitioner filed a supplemental brief requesting an additional $10,341.10 for fees and costs incurred while preparing the reply brief to Respondent's objection, and adjusting attorneys' costs to $2,846.25, bringing the total amount of fees and costs requested to **$112,227.18**. Pet'r's Supplemental Submission for Pet'r's Mot. ("Pet'r's Supp. Br.") at 3, ECF No. 75. For the reasons stated below, I find that Petitioner's claim did have reasonable basis, and she is therefore entitled to fees and costs.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] All citations to Petitioner's motion for attorneys' fees and costs will use the page numbers generated by CM/ECF in ECF No. 66.

## I.    Procedural History

On August 27, 2019, Petitioner filed a petition, *pro se*, for compensation under the National Vaccine Injury Compensation Program alleging that she suffered from injuries including worsening food allergies, fatigue, and pain due to a human papillomavirus ("HPV") vaccine administered on August 30, 2016. Pet. ¶¶ 1, 4–7, ECF No. 1. Petitioner also filed medical records at this time. Pet'r's Exs. 1–4. In April 2020, Petitioner filed additional medical records. Pet'r Ex. 5–22. On May 11, 2020, Petitioner filed a declaration. Pet'r's Ex. 23.

Respondent filed his Rule 4(c) report on September 14, 2020, recommending against compensation. Resp't's Rept., ECF No. 26. In his report, Respondent challenged reasonable basis of the claim on the grounds that Petitioner did not provide objective evidence of any vaccine-related injury. *Id.* at 1, 10. In support of this argument, Respondent stated that "[P]etitioner was never diagnosed with any defined injury following vaccination." *Id.* at 9. Respondent adds that "Petitioner has not yet offered a reputable medical or scientific theory of causation." *Id.* at 10. Respondent maintained that "[a]ny indications in the record that [P]etitioner suffered an adverse vaccine reaction appear to be based primarily on parental reporting, and are contradicted by diagnostic test results." *Id.* at 8. Respondent argued that any statements that attribute Petitioner's injury to her vaccination came from Petitioner's parents, and not medical professionals. *See id.* Respondent also cited to several of Petitioner's medical records to argue that Petitioner's alleged injuries of fatigue and food allergies were pre-existing. *Id.* at 9. Respondent followed his Rule 4(c) report with a motion to dismiss on February 8, 2021. ECF No. 27. The motion did not make any additional arguments.

Petitioner responded on May 24, 2021, with supporting medical literature and a declaration from Petitioner's father. ECF No. 38; Pet'r's Exs. 24–72, 76. She argued that "[a]n assessment beyond feasibility at this juncture of the case would not be appropriate, as the medical evidence supporting reasonable basis merits further development by expert analysis and opinion," which had not been ordered yet. ECF No. 38, at 3. Respondent filed a reply on June 23, 2021. ECF No. 41. And on July 23, 2021, Petitioner filed a surreply with additional documentation. ECF No. 43; Pet'r's Exs. 77–85.

On March 31, 2022, in construing Respondent's motion to dismiss as a motion for summary judgment, I dismissed the motion on the basis that there remained material facts in dispute. ECF No. 45, at 3. I ordered Petitioner to file an expert report. *Id.*

On September 9, 2022, Petitioner filed a letter from an expert estimating that he could complete an expert report by November 7, 2022. Pet'r's Ex. 86, ECF No. 49-1. However, on October 21, 2022, Petitioner filed a status report indicating that she intended to file a motion to dismiss. ECF No. 50.

On November 4, 2022, Petitioner filed a motion for a decision dismissing her petition. ECF No. 52. Petitioner stated that she "wishes to exercise her election under the Vaccine Act so that she may bring a civil action against the vaccine manufacturer." *Id.* at 1. Petitioner continued that her "wish to exercise her election under the Vaccine Act to pursue a civil action against the vaccine

manufacturer should not be viewed as suggesting that [she] does not believe in the merits of her claim or that her injuries are not caused by the HPV vaccination." *Id.* Petitioner stated that she "has reviewed decisions and entitlement rulings in the Vaccine Program that present issues like the issues in her claim." *Id.* at 2. She continued that "[h]er review of the case law and an investigation of the facts and circumstances of her case have demonstrated to Petitioner that she will be unable to meet the requirements imposed by the [C]ourt for compensation in the Vaccine Program." *Id.* Petitioner stated that "[i]n these circumstances, to proceed further would be unreasonable and would waste the resources of the Court, the Respondent, and the Vaccine Program." *Id.* On November 17, 2022, Respondent filed a response stating that he did not object to a dismissal and reserved the right to oppose any application for attorneys' fees and costs based on a lack of reasonable basis. ECF No. 55 at 1. Petitioner filed a reply requesting a decision dismissing her petition on November 19, 2022. ECF No. 56.

On November 30, 2022, I issued a decision dismissing Petitioner's claim. ECF No. 57. On December 14, 2022, Petitioner filed a motion to redact the decision. ECF No. 59. Respondent filed a response on December 16, 2022, deferring to my judgment. ECF No. 60. On February 27, 2023, I entered an order denying Petitioner's motion for redaction. ECF No. 62.

On June 30, 2023, Petitioner filed a motion for final attorneys' fees and costs. Pet'r's Mot. Included with the motion was a newly published piece of medical literature. Pet'r's Ex. 88, Tab 9. Respondent filed an objection to Petitioner's motion on September 15, 2023. Resp't's Resp. On October 25, 2023, Petitioner filed a reply brief and on November 25, 2023, Petitioner filed a supplemental brief invoicing time spent on the reply. Pet'r's Reply; Pet'r's Supp. Br.

## II.    Standards of Review

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Vaccine Program attorneys are not automatically entitled to a fees award in unsuccessful cases like this one. At a minimum, such a claim must be shown to have: (1) possessed reasonable basis; and (2) have been brought in good faith. § 15(e)(1); *see, e.g.*, *Chuisano v. Sec'y of Health & Hum. Servs.,* 116 Fed. Cl. 276, 284 (2014). Reasonable basis is an objective inquiry while good faith is a subjective inquiry. *Id.* at 289.

### a.    Good Faith

Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.,* 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied.[3] *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)); *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

---

[3] Respondent does not contest good faith in this case.

### b.    Reasonable Basis Determination

An analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at \*6–7. While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano,* 116 Fed. Cl. at 283. The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs*., 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert and clarifying that "the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion"). Indeed, determining what constitutes "more than a mere scintilla" is a "daunting task." *Cottingham v. Sec'y of Health & Hum. Servs.*, 154 Fed. Cl. 790, 795 (2021). The Federal Circuit has made a determination of law regarding what constitutes "objective" evidence in the context of a reasonable basis analysis. It found that multiple pieces of evidence, perhaps not sufficient alone, when taken together, can amount to more than a mere scintilla. *See id.* at 793–95. Furthermore, the Federal Circuit explained that "[m]edical records can support causation [for reasonable basis] even where the records provide only circumstantial evidence of causation" for entitlement. *Cottingham*, 971 F.3d at 1346.

In another opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379–81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham*, 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.,* 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.,* No. 99-683V, 2007 WL 4793152, at \*4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376–77 (Fed. Cir. 1994) (holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis")). If reasonable basis is lost, "[p]etitioners' counsels have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham v. Sec'y of Health & Hum. Servs.,* 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Hum. Servs.,* 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Hum. Servs.,* 128 Fed. Cl. 724, 727 (2016)).

### III.    Parties' Contentions

### a.    Respondent

Respondent challenged the reasonable basis of Petitioner's claim from the time it was filed through her application for fees and asserted attorneys' fees and costs should not be awarded. Resp't's Resp. at 14. Respondent's objection to attorneys' fees and costs relies heavily on the arguments made in his Rule 4(c) report and motion to dismiss. *Id.* at 6. But Respondent argued that the issue of reasonable basis has not been litigated. *Id.* All that was previously decided was that material facts remained in dispute and a determination on reasonable basis was not made. *Id.*

Respondent stated that Petitioner "failed to establish a defined and recognized injury as required under the Vaccine Act." *Id.* at 7. The Vaccine Act "places the burden on the petitioner to make a showing of at least one defined and recognized injury." *Id.* (quoting *Lombardi v. Sec'y of Health & Hum. Servs.,* 656 F.3d 1343, 1353 (Fed. Cir. 2011)). He added it is Petitioner's "burden to show by a preponderance of the evidence that she suffered from any medically recognized 'injury,' not merely a symptom or manifestation of an unknown injury." *Id.* (quoting *Lombardi*, 656 F.3d at 1353). Respondent argued that Petitioner alleged "over a dozen conditions," with differing pathologies, but failed to establish at least one defined and recognized injury, thus making Petitioner's claim infeasible and precluding a finding of reasonable basis. *Id.* at 8. Respondent also believed Petitioner misrepresented her medical records to support any alleged injury. *Id.* at 8–11.

Additionally, Respondent opined I should not consider the medical literature that was filed with Petitioner's motion because it was not filed as part of the underlying claim and therefore should not be considered as part of a reasonable basis finding. *Id.* at 11–12. Respondent cited *Goodgame v. Sec'y of Health & Hum. Servs.* for the position that evidence submitted after judgment on the merits has entered cannot be used to form a reasonable basis for Petitioner's claim. *Id.* at 12 (citing 157 Fed. Cl. 62, 73 (2021) (("[T]he time for introducing these articles was before the Special Master issued his ruling on the merits, when they could aid his client's attempt to be compensated for her alleged injury, not after his client had lost on the merits and they could only aid his attempt to collect fees.") (emphasis omitted)). "Allowing [P]etitioner to submit reasonable basis evidence following the entry of judgment would render Vaccine Rule 36 and RCFC 60 effectively meaningless." *Id.* Respondent also stated that Petitioner did not request a relief of judgment and even if she did, the facts would not warrant relief because the medical literature was not "newly discovered." *Id.* (quoting RCFC 60(b)(2)).

Finally, Respondent argued that because Petitioner did not establish a defined and recognized injury, the submitted medical literature cannot help establish a reasonable basis. *Id.* at 13 (citing *Lasnetski v. Sec'y of Health & Hum. Servs.*, 128 Fed. Cl. 242 (2016), *aff'd*, 696 F. App'x 497 (Fed. Cir. 2017)). And even if Petitioner posits there is enough evidence of her alleged condition to satisfy a mere scintilla of evidence required for reasonable basis, Respondent argued that a special master still "has discretion to find a lack of reasonable basis even where more evidence exists." *Id.* (citing *Cottingham*, 971 F.3d at 1346). Respondent emphasized that the key word in the Federal Circuit's holding in *Cottingham* is "could" and the presence of more than a mere scintilla of evidence does not mandate a finding of reasonable basis. *Id.* at 4 (citing *Cottingham*, 971 F.3d at 1346 (holding that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis")).

**b. Petitioner**

Because reasonable basis was raised early on in litigation, Petitioner addressed this issue in her opening brief for attorneys' fees and costs and responded to Respondent's objection in her reply brief. Pet'r's Mot. at 10; Pet'r's Reply. In summary, Petitioner alleged she "produced feasible evidence that her condition could have been caused by her HPV vaccination," thus establishing reasonable basis. Pet'r's Mot. at 40–41.

First, Petitioner compared the summary judgment standard, applied in the Court's denial of Respondent's motion to dismiss, to the reasonable basis standard. *Id.* at 13 ("While the summary judgment standard that guided the Court's denial of Respondent's motion to dismiss is different from the reasonable basis standard, the medical facts and evidence to be considered are identical."); *see also* Pet'r's Reply at 2. She opined that in denying Respondent's motion to dismiss, "Petitioner produced 'some evidence' to create an evidentiary dispute, thus meeting the reasonable basis standard." Pet'r's Mot. at 14. She stated that if she had not produced evidence, the motion to dismiss/motion for summary judgment would have been granted. *Id.*

Next, Petitioner submitted "that her claim that the HPV vaccine caused the Petitioner's chronic fatigue syndrome, long-lasting headaches, autoimmune encephalitis, symptoms of [postural orthostatic tachycardia syndrome ("POTS")] and related autoimmune injuries was feasible." *Id.* at 15 (emphasis omitted). Petitioner maintained that "she has far exceeded the threshold to show feasibility throughout the life of her claim and thus Petitioner establishes reasonable basis." *Id.* at 16.

For support, Petitioner cited to the record for each of the alleged injuries (both new and worsening symptoms post vaccination) and how it helps establish reasonable basis. This includes chronic fatigue syndrome, headaches, nausea and dizziness, constipation and stomach pain, muscle and joint pain, swallowing and weight loss, and her peanut allergy. *Id.* at 17–37. Petitioner added that chronic fatigue syndrome, headaches, and other conditions are well-defined diagnoses in Petitioner's medical records and medical literature, thus showing they are injuries rather than mere symptoms. Pet'r's Reply at 8 n.3, 9 (Petitioner acknowledging even if this falls short of proving causation, it constitutes more than a mere scintilla of evidence of causation). Petitioner also described how she meets the feasibility threshold for the *Althen* prongs. Pet'r's Mot. at 37–40; *see* Pet'r's Reply at 4, 6 (Petitioner acknowledging that she would not be able to satisfy *Althen*). Within this discussion she cited Mehlsen et al.[4] as evidence of autoimmunity following HPV vaccination. Pet'r's Mot. at 38–39 (citing Pet'r's Ex. 88, Tab 9).

In response to Respondent's position that Petitioner has not established a cognizable injury under the Vaccine Act, Petitioner argued Respondent misapplied the *Althen* causation standard with the reasonable basis standard. Pet'r's Reply at 6. Petitioner explained that *Lasnetski*, which was cited by Respondent, found that the "purpose of the 'defined and recognized injury' standard in *Lombardi* . . . was to set the minimum standard of definitiveness for injuries required for a court to be able to [analyze causation]." *Id.* (citing Resp't's Resp. at 8 (citing *Lasnetski* at 262)). Petitioner further pointed out that while the petitioner in *Lasnetski* failed to prove causation because there was not a definitive injury, she was still awarded interim and final attorneys' fees

---

[4] Jesper Mehlsen et al., *Autoimmunity in Patients Reporting Long-Term Complications After Exposure to Human Papilloma Virus Vaccination*, 133 J. AUTOIMMUNITY 1 (2022).

and costs. *Id.* (citing *Lasnetski v. Sec'y of Health & Hum. Servs.*, No.14-580V, 2017 WL 6008748, at *1, *5 (Fed. Cl. Spec. Mstr. Nov. 2, 2017)). Reasonable basis was not an issue raised in attorneys' fees in *Lasnetski*. *Id.* at 7. "Thus, even in the leading case cited by Respondent requiring proof of a definite injury, evidentiary insufficiency to prove a cognizable injury to establish causation is a consideration separate from reasonable basis." *Id.*

As to the newly filed medical literature, Petitioner stated it was not published until November 7, 2022, after Petitioner decided to move to dismiss her petition. *Id.* at 11. Thus, "the critical consideration cited in *Goodgame*, 'the time for introducing [evidence] was before the Special Master issued his ruling on the merits, when [it] could aid [Petitioner]'s attempt to be compensated for [their] alleged injury' was not applicable." *Id.* (emphasis omitted) (citing Resp't's Resp. at 12 (citing *Goodgame*, 157 Fed. Cl. 73)). Petitioner further opined that the attorneys' fees phase under the Vaccine Act is a separate proceeding that is concluded with a separate and independent judgment pursuant to Vaccine Rule 11(a)." *Id.* Therefore Respondent's position that evidence was submitted after judgment of the entitlement phase of the case and therefore should not be considered is inapt. *Id.*

Finally, Petitioner challenged Respondent's position that I should exercise discretion even where more than a mere scintilla of evidence exists for reasonable basis. *Id.* at 14. In urging such interpretation, Petitioner believed Respondent concedes there is more than a mere scintilla of evidence. *Id.* "Respondent's argument is that [Petitioner's] purported lack of evidence merits the Court's denial of reasonable basis. Based on Petitioner's presentation of the evidence in her attorneys' motion, however, Respondent's claim is without merit. Respondent is in effect asking the court to abuse its discretion to deny attorneys' fees even when the Petitioner has amply satisfied the accepted standard of "more than a mere scintilla of evidence." *Id.* at 15.

## IV.    Reasonable Basis Analysis

After careful review of the record,[5] I find that Petitioner has satisfied the reasonable basis requirements because there is more than a scintilla of objective evidence in the record supporting a feasible claim.

Before turning to the objective reasonable basis inquiry, I first address Respondent's argument that the Mehlsen et al. article should not support Petitioner's motion for fees and costs because it was filed after judgment entered for entitlement. In *Goodgame*, the Court refused to consider medical literature filed after the special master had already denied entitlement to support a claim for attorneys' fees. 157 Fed. Cl. 62. But there are some instances where filing evidence during the fees stage may be appropriate. *Merino v. Sec'y of Health & Hum. Servs.*, No. 19-1723V, 2022 WL 16579475, at *9 (Fed. Cl. Spec. Mstr. Sept. 20, 2022). First, the article was not published

---

[5] While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

until after Petitioner had dismissed her petition; thus, there is no way she could have filed it earlier. And, if Petitioner had not filed a voluntary motion to dismiss her case and was still proceeding on a litigation track, it is likely, as most petitioners do, she would continue to file medical literature, expert reports, and updated medical records as they become available to support her claim. All of this happens after the petition is filed and should not be ignored when later assessing reasonable basis. *See H.D. v. Sec'y of Health & Hum. Servs.*, No. 19-871V, 2024 WL 2034219, at *6 (Fed. Cl. Spec. Mstr. Apr. 8, 2024) (finding "the date on which supporting evidence was created . . . is not dispositive of whether petitioner can rely on that evidence as supporting a reasonable basis"); *Merino*, 2022 WL 16579475, at *9 (finding that "filing evidence in support of reasonable basis during the fees stage is not improper"). For those reasons, I find it appropriate to consider Mehlsen et al. article for a reasonable basis analysis.

Turning now to the question of reasonable basis, the Federal Circuit in *Cottingham* stressed the *prima facie* petition requirements of section 300aa-11(c)(1) of the Vaccine Act to establish such. 971 F.3d at 1345–46. Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;
(2) received the vaccination in the United States, or under certain stated circumstances outside the United States;
(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
(5) has not previously collected an award or settlement of civil action for damages for the same injury.

*Id.* Here, Respondent's objection to reasonable basis is that Petitioner's claim is not supported by evidence that demonstrates she sustained a vaccine-related injury. Respondent focuses on the numerous conditions alleged by Petitioner in arguing she failed to establish at least one defined and recognized injury and asserting the claim is therefore infeasible. "However, it is not necessary for petitioner to substantiate the entirety of her allegations in order to have had a reasonable basis for the filing of her petition." *H.D.*, 2024 WL 2034219, at *5.

Prior to vaccination, Petitioner had well-controlled ADD and a peanut allergy. There were no significant concerns of fatigue, headaches, nausea, or constipation. After vaccination, Petitioner showed new and worsening symptoms. For example, approximately one month post vaccination, Petitioner complained of fatigue. Pet'r's Ex. 6 at 218. On December 19, 2018, Dr. Ghaemi added "[c]hronic fatigue" as a "primary encounter diagnosis." Pet'r's Ex. 7 at 35. Chronic fatigue was again noted as a diagnosis on November 6, 2019. *Id.* at 1. Chronic fatigue was accompanied in the medical record by the corresponding ICD diagnostic code. *See* Pet'r's Exs. 24–26. Mehlsen et al. provides that chronic fatigue syndrome and POTS can have an autoimmune etiology following vaccination and that onset of symptoms can arise within six months of vaccination. *See* Pet'r's Ex. 75 at 2–3. Petitioner also reported headaches after vaccination and cited the Gardasil package insert to show that headache is the most common adverse reaction following vaccination. Pet'r's Mot. at 27–28.

While the medical records and other submitted evidence have clear shortcomings and do not preponderantly support Petitioner's claim, they do, at a minimum, present more than a mere scintilla of evidence supporting general vaccine causation with respect to Petitioner's complaints. The lack of explicit or implicit statements of vaccine causation and diagnoses made by a treating medical professional, in the absence of an expert report regarding the *Althen* prongs, undercuts the veracity of her claim. However, a motion for fees and costs is not subject to the same standard as entitlement. Petitioner needs only to submit "more than a mere scintilla" of objective evidence in support of her claim. *James-Cornelius*, 984 F.3d at 1379. In fact, the Federal Circuit has specifically held that "[m]edical records can support causation [for reasonable basis] even where the records provide only circumstantial evidence of causation" for entitlement. *Cottingham*, 971 F.3d at 1346.

Petitioner's medical records and other submitted evidence include more than a scintilla of objective evidence that she developed injuries or worsening injuries after her HPV vaccination. In accordance with the Federal Circuit's guidance in *Cottingham* and *James-Cornelius*, I find that Petitioner's claim had a reasonable basis, and she is therefore entitled to attorneys' fees and costs.

## V.    Reasonable Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

A special master need not engage in a line-by-line analysis of Petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011). It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### a. Hourly Rates

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at \*19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules can be accessed online.[6]

Petitioner requests the following rates for the work of her counsel: for Mr. Robert Krakow, $464.00 per hour for work performed in 2019, $484.00 for work performed in 2020, $509.00 per hour for work performed in 2021, $525.00 per hour for work performed in 2022, and $553.00 per hour for work performed in 2023; and for Mr. Elan Gerstmann, $497.00 per hour for work performed in 2021. Petitioner also requests rates from $156.00 per hour to $186.00 per hour for work performed by her counsel's paralegals from 2019 to 2023.

I have reviewed the billing records submitted with Petitioner's request, and I find that the hourly rates billed for 2019 through 2023 for attorney and paralegal time are all reasonable and in accord with prior awards made by other special masters. Therefore, I will award these rates.

### b. Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 434). It is well-established that billing for administrative or clerical tasks is not permitted in the Vaccine Program. *See e.g.*, *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Isom v. Sec'y of Health & Hum. Servs.*, No. 94-770, 2001 WL 101459, at \*2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with Respondent that tasks such as filing and photocopying are subsumed under overhead expenses); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at \*5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (failing to award fees for the review of CM/ECF notifications and the organization of the file); *McCulloch*, 2015 WL 5634323, at \*26 (noting that clerical and secretarial tasks should not be billed at all, regardless of who performs them).

Upon review of the submitted billing records, I find most of the time billed to be reasonable. However, I find a percentage reduction necessary.[7]

---

[6] The OSM Fee Schedules are available at: http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

[7] In reducing an award of fees, the goal is to achieve rough justice, and therefore a special master may take into account their overall sense of a case and may use estimates when reducing an award. *See Florence v. Sec'y of Health & Hum. Servs.*, No. 15-255V, 2016 WL 6459592, at \*5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

It should be noted that this case was terminated prematurely, and without substantive adjudication, so that Petitioner could pursue a civil action. "While this factor does not in itself affect whether the petition was filed in good faith and with a reasonable basis, several special masters have found that this circumstance warrants consideration with respect to the amount of attorneys' fees that should be paid by the Program." *H.D.*, 2024 WL 2034219, at *8; *see Atjian v. Sec'y of Health & Hum. Servs.*, No. 21-1413V, 2022 WL 17587757, at *12–13 (Fed. Cl. Oct. 18, 2022) (reducing the requested fees by 25% because petitioner's termination of the case resulted in "[n]othing of substance [being] accomplished in the case, beyond meeting the Act's basic requirements"); *Wingerter ex rel. H.W. v. Sec'y of Health & Hum. Servs.*, No. 20-1408V, 2022 WL 1843522, at *14–15 (Fed. Cl. May 17, 2022) (reducing the requested fees by 15% explaining that "[w]hile I recognize that attorney work is necessary to meet the minimum requirements of the statue by requesting, reviewing, and filing medical records, the amount of such attorney work should be limited when the intent is to withdraw the petition and pursue alternative litigation"). While acknowledging that the Vaccine Act permits petitioners to exit the Program to bring a civil action outside of the Program, petitioners' attorney should be wary of excessive and duplicative billing, even when trying to complete the substantive work to establish a reasonable basis.

There is no evidence this case was initially filed with the intention of pursuing civil action. However, reasonable basis was raised in Respondent's Rule 4(c) report within the first year of litigation. And upon reviewing a 2021 decision on attorneys' fees and costs admonishing the viability of HPV vaccine injury claims, Petitioner's counsel brought this to Petitioner's attention and ultimately decided to dismiss the case one year later and pursue civil action. *See* Pet'r's Mot. at 54–58 (citing *E.S. v. Sec'y of Health & Hum. Servs.*, No. 17-480V, 2021 WL 5816006, at *4–5 (Fed. Cl. Nov. 10, 2021). *Thomas ex rel. Z.T. v. Sec'y of Health & Hum. Servs.*, directly addressed the circumstance wherein the petitioner did not definitively decide to exit the program until later in proceedings. No. 20-886V, 2021 WL 2389837, at *11–12 (Fed. Cl. Spec. Mstr. May 17, 2021). In that case, the special master acknowledged that "substantive work during the pendency of th[e] case was warranted and reasonable because petitioner's abandonment of his claim within the Program was not inevitable. Nonetheless, [the special master] remain[ed] concerned that the hours billed in th[e] case remain[ed] high in comparison to what was actually accomplished." *Id.* at *11. Accordingly, in light of that and other issues the requested fees were reduced by 20%. *Id.* at *12.

Even after deciding to voluntarily dismiss this case, billing records reflect numerous communications with Petitioner and her family regarding the next steps, review of POTS caselaw, and discussions with the expert regarding his opinion on the case. Pet'r's Ex. 88, Tab 2 at 28, 32–33, 36. Attorneys are not entitled to compensation for performing work that is not necessary. *Riggins v. Sec'y of Health & Hum. Servs.*, No. 99-382V, 2009 WL 3319818, at *4 (Fed. Cl. Spec. Mstr. June 15, 2009) (citing *Hensley*, 461 U.S. at 434). Additionally, petitioners are not given a "blank check to incur expenses." *Id.* (quoting *Pereira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994)).

Like *Thomas*, billing records show excessive hours were billed in this case when compared to what was actually accomplished. For example, counsel has four separate entries which he billed over 11 hours per day on this case alone. Pet'r's Ex. 88, Tab 2 at 17 (11.25 hours on 5/22/2021), 19 (11.75 hours on 5/23/2021 and 11.6 hours on 5/24/2021), 22 (11 hours on 7/23/2021). Further, Petitioner requests an overall excessive amount of fees for a case that was terminated prematurely

without substantive adjudication. Similar to this case, *McElerney v. Sec'y of Health & Hum. Servs.*, was an HPV vaccine case pending for over three years before the petitioner ultimately determined that she would voluntarily dismiss her case and pursue a civil action. No. 16-1540V, 2020 WL 4938429 (Fed. Cl. Spec. Mstr. July 28, 2020). Unlike this case, the *McElerney* petitioner prosecuted the case into the expert stage. Even with expert costs, the amount of attorneys' fees and costs requested in *McElerney* was only $57,311.61, approximately half the total requested $112,227.18 in this case. *See* No. 16-1540V, 2020 WL 7366343 (Fed. Cl. Spec. Mstr. Nov. 2, 2020).

Accordingly, I will reduce the attorneys' fees by 20%, or $21,757.65. Therefore, Petitioner is entitled to final attorneys' fees in the amount of $87,030.60.

### c.  Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira*, 27 Fed. Cl. at 34. Petitioner requests $2,846.25 in costs incurred by counsel, primarily compromised of expert fees from Dr. Marcel Kinsbourne, and $572.68 in costs paid by Petitioner, primarily comprised of the filing fee. I have reviewed the requested costs and find them to be largely reasonable. However, Petitioner did not provide documentation of payment supporting the additional $750.00 for Dr, Kinsbourne, and therefore a reduction of $750.00 is appropriate. *Compare* Pet'r's Mot. at 59; Pet'r's Supp. Br. at 3 *with* Pet'r's Ex. 88, Tab 7. Accordingly, I will award $2,096.25 in costs incurred by Petitioner's counsel, and $572.68 in costs incurred by Petitioner.

### VI.  Conclusion

In accordance with the Vaccine Act, 42 U.S.C. §15(e) (2018), I have reviewed the billing records and costs in this case and finds that Petitioner's request for fees and costs is reasonable. Based on the above analysis, I find that it is reasonable to compensate Petitioner and her counsel as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $108,788.25 |
| (Reduction to Fees) | $21,757.65 |
| **Attorneys' Fees Awarded** | **$87,030.60** |
| | |
| Attorneys' Costs Requested | $2,846.25 |
| (Reduction of Costs) | $750.00 |
| **Attorneys' Costs Awarded** | **$2,096.25** |
| | |
| **Attorneys' Fees and Costs** | **$89,126.85** |

| | |
|---|---|
| Petitioner's Costs Requested | $572.68 |
| (Reduction of Costs) | $0.00 |
| **Petitioner's Costs Awarded** | **$572.68** |

Accordingly, I award a lump sum in the amount of **$89,126.85, representing reimbursement for Petitioner's attorneys' fees and costs,** to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement. I also award a lump sum in the amount of **$572.68, representing reimbursement for Petitioner's expenses,** to be paid through an ACH deposit to Petitioner's counsel's IOLTA account to be reimbursed to Petitioner.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above Decision.[8]

**IT IS SO ORDERED.**

<u>s/Herbrina D. S. Young</u>
Herbrina D. S. Young
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.